UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Mack Hugh Sullivan, Jr., and
    Pamela Lightfoot Sullivan,                 Case No. 11-53445
                                                   Chapter 7
                        Debtors                     Hon. Marci B. McIvor

_____/

Barry L. Zisser,

           Plaintiff,

v.                                                     Adv. P. No. 11-6261

Mack Hugh Sullivan, Jr.

           Defendant.
_____/

## **OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on plaintiff Barry L. Zisser's Motion for Summary Judgment. Plaintiff seeks judgment on an adversary complaint. Plaintiff asserts that a $30,496.18 debt owed to him under a Florida state court judgment is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(5) and/or (a)(15). For the reasons set forth in this Opinion, Plaintiff's Motion is granted.

### **I. Facts**

Debtor/defendant Dr. Mack Sullivan, Jr. and his ex-wife, Dr. Emily Hoff-Sullivan, were divorced on October 10, 2002. The parties have been engaged in litigation regarding Defendant's support obligations since 2003. At some point, Plaintiff attorney Barry Zisser began representing Dr. Hoff-Sullivan in her ongoing efforts to enforce the

support portion of the judgment of divorce. A brief history of the litigation between Dr. Hoff-Sullivan and Defendant is necessary to the Court's analysis of whether attorney fees owed by Defendant to plaintiff Barry Zisser are a nondischargeable obligation in Defendant's bankruptcy case.

At the time of the divorce, Defendant and Dr. Hoff-Sullivan were residing in Georgia. Dr. Hoff-Sullivan was awarded primary custody of the couple's three children and Defendant was ordered to pay child support in the amount of one-third of his annual income.[1] While the divorce judgment was entered in the fall of 2002, Defendant was not required to start paying child support until October, 2003. (*In re Marriage of Mack H. and Emily Sullivan*, case no. 16-2008-DR-006674-FMXX, Order Ruling On All Pending Matters, ¶ D (Circuit Court, 4th Judicial Circuit, Duval County, Florida, February 22, 2010)(hereinafter referred to as "Florida Circuit Court Order 2/22/10). Defendant apparently had suffered some financial set-backs and the moratorium on payments was intended to give him time to get back on his feet. At the time the divorce judgment was entered, Dr. Hoff-Sullivan's income was $200,000 per year. Defendant's income was $52,000 per year. (Florida Circuit Court Order 2/22/10, ¶ G).

Because Defendant did not make timely child support payments in the fall of 2003, Dr. Hoff-Sullivan sought enforcement of the divorce agreement through contempt proceedings in Georgia. (Florida Circuit Court Order 2/22/10, ¶ E). In 2004, the Georgia court set child support payments at $1,430.00 per month. (*Sullivan v. Hoff-*

---

[1] The record before this Court does not include a copy of the judgment of divorce or any agreement regarding child support. The facts regarding the child support agreement are taken from various Florida court circuit and appellate court opinions.

*Sullivan*, case no. 1D10-3796 (Florida Court of Appeals, 1st District, February 16, 2011)(hereinafter referred to as Florida Ct. of Appeals 2/16/11). Defendant did not begin making child support payments until August, 2005.

In 2006, Dr. Hoff-Sullivan relocated with the minor children to Florida. In 2007, Dr. Hoff-Sullivan filed a new motion for contempt in Georgia arguing that the divorce agreement was not being properly enforced because child support was supposed to be self-modifying. She argued that, rather than paying a fixed amount year after year, the agreement required Defendant to pay one-third of his yearly salary regardless of whether his income increased or decreased. The Georgia court disagreed and upheld the monthly support payment in the amount of $1,430. (Florida Ct. of Appeals 2/16/11 at 2).

On July 31, 2008, Dr. Hoff-Sullivan petitioned for recognition, domestication, enforcement and modification of the Georgia judgment of divorce in Florida.[2] She asked the Florida Circuit Court to re-interpret the support agreement, find that Defendant was in arrears on payments, and order Defendant to pay one-third of his yearly income from 2005 forward as support. Defendant asserted that the amount of support payments had been determined by the Georgia court and re-visiting the issue was precluded by *res judicata*. (Florida Ct. of Appeals 2/16/11 at 3).

The Florida Circuit Court found that Defendant had paid $105,820 in child support, but still owed $222,854.84 in unpaid child support from 2003 through December 31, 2009. It modified the child support to one-third of his 2009 income or

---

[2]It appears that Plaintiff began representing Dr. Hoff-Sullivan at the time she sought domestication of the Georgia judgment. *See* Adversary Complaint ¶ 8.

$2,084.36 per month beginning July 1, 2010. It also awarded Dr. Hoff-Sullivan $15,000 in attorney fees. (Florida Circuit Court Order 2/22/2010 and Amended Order Enforcing Final Judgment 7/29/2010).

Defendant appealed the Florida Circuit Court's rulings. The Florida Court of Appeals invoked *res judicata* and found that the Georgia court had fully litigated the question of child support. The Florida Circuit Court was thus precluded from relitigating the amount of support owed by Defendant prior to the date the Georgia judgment was domesticated in Florida. The Court of Appeals directed that, on remand, the Circuit Court had jurisdiction to modify child support only from the date the petition for domestication was filed, i.e. July 31, 2008. While Defendant appealed the issue of attorney fees, the appellate court found that the issue had not been properly preserved and the trial court's ruling on attorney fees was affirmed. (Florida Court of Appeals 2/16/2011).

On January 6, 2011, the Florida Circuit Court issued an Order Ruling on Pending Motions which addressed, among other things, a Motion for Imposition of Sanctions and Fourth Motion for Adjudication of Contempt for Failure to Pay Court Ordered Child Support. In that order, the Circuit Court found that Defendant had "consistently failed to comply with the Orders of this Court" and that no child support payments had been made. (Florida Circuit Court Order 1/6/2011, ¶¶ A, D, G). The Court recognized that Dr. Hoff-Sullivan had incurred more than $16,000 in legal fees "since the last award of attorney's fees which have, likewise, remained unpaid." (Florida Circuit Court Order 1/6/2011 ¶ F). Thus, the Court awarded an additional $15,496.18 in attorney fees to Dr. Hoff-Sullivan.

On December 2, 2011, a panel of the Florida Court of Appeals found that the Circuit Court, on remand, had not properly modified the child support agreement. Specifically, the lower court was instructed to determine the proper amount of child support owed from July 31, 2008 forward (i.e. the date the Georgia judgment was domesticated in Florida). It remanded the case for appropriate action. The opinion was silent regarding the issues of contempt and attorney fees. (Fl. Court of Appeals 12/2/11).

On December 15, 2011, a different panel of the Florida Court of Appeals affirmed the Circuit Court's June 1, 2011 Order on Status Conference. It specifically affirmed "the trial court's finding of contempt and the award of attorney's fees." (Fl. Court of Appeals 12/15/2011).

On January 24, 2011, on a motion filed by plaintiff Barry Zisser for entry of judgment for the attorney fees owed to him, the Florida Circuit Court entered a Final Judgment Against Mack H. Sullivan in favor of Plaintiff in the amount of $30,496.18. This amount, presumably, represents the attorney fees awarded to Dr. Hoff-Sullivan by the Florida Circuit Court - $15,000 awarded on February 22, 2010, and $15,496.18 awarded on January 6, 2011.

Defendant and his wife Pamela Lightfoot Sullivan filed a joint voluntary Chapter 7 bankruptcy petition on May 10, 2011. On August 12, 2011, Plaintiff filed the present adversary complaint seeking to have the January 24, 2011 judgment for $30,496.18 held nondischargeaable pursuant to 11 U.S.C. §§ 523(a)(5) and/or (a)(15). Plaintiff asserts that the attorney fees awarded are in the nature of a domestic support obligation and are nondischargeable under 11 U.S.C. § 523(a)(5). Alternatively, he contends that

5

the fees are a debt to a former spouse incurred in the course of a divorce or separation and are nondischargeable under 11 U.S.C. § 523(a)(15). Plaintiff filed the present Motion for Summary Judgment on February 27, 2012.

## II. Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under title 11 or arising in a case under Title 11. *See* 28 U.S.C. §§ 1334 and 157. Core proceedings include proceedings to determine dischargeability. 28 U.S.C. § 157(b)(2)(I).

## III. Standard for Summary Judgment

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

material fact." *Celotex*, 477 U.S. 317, 323. A "genuine" issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). Once the movant meets this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted." *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995) (internal quotation marks and citation omitted).

In the instant case, the parties agree that the issue of whether attorney fees incurred in entering an award of support are nondischargeable is a legal issue which should be decided on summary judgment.

### IV. <u>Analysis</u>

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations. Section 523(a)(5) provides that a discharge pursuant to 11 U.S.C. § 727 does not discharge a debtor from any debt "for a domestic support obligation". 11 U.S.C. § 101(14A), in relevant part, defines a domestic support obligations as:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

7

>> (A) owed to or recoverable by--
>>
>>> (I) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>> (ii) a governmental unit;
>>
>> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated[.]

Section 523(a)(15) provides that § 727 does not discharge a debtor from any debt,

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

What constitutes support for purposes of determining whether an obligation is dischargeable under 11 U.S.C. § 523(a)(5) is controlled by federal bankruptcy law, not state law. *Reissig v. Gruber (In re Gruber)*, 436 B.R. 39, 43 (Bankr. N.D. Ohio 2010) citing *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983). [3] Because Defendant's bankruptcy case is in the Eastern District of Michigan, Sixth Circuit case law controls.

The Sixth Circuit Court of Appeals has established a test for determining whether a particular debt fits within the parameters of § 523(a)(5):

---

[3] Most cases arising under § 523(a)(5) address whether an obligation is a support obligation or a property settlement obligation. In that context, federal law controls what debts are nondischargeable but deference is paid to state law for purposes of distinguishing support from a property settlement obligation. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983).

> A court must determine (1) if the parties and state court intended to create a support obligation, and (2) if the obligation actually provides necessary support. If both of these conditions are satisfied, the bankruptcy court must then determine if the support amount is excessive, and therefore unreasonable, under traditional concepts of support. If the Court determines that the award amount is unreasonable, the obligation is dischargeable to the extent necessary to effectuate the purpose of bankruptcy law. *In re Sorah*, 163 F.3d 397, 400 (6th Cir.1998); *In re Fitzgerald*, 9 F.3d 517, 520 (6th Cir.1993).

*Burnett v. Shain (in re Shain)*, 344 B.R. 821, 824 (6th Cir. 2006).

In this case, Defendant does not dispute that he has an outstanding support obligation, although there appear to be unresolved issues regarding the exact amount owed. The sole issue before this Court is whether attorney fees incurred by Plaintiff in enforcing the support provision of the judgment of divorce is part of the nondischargeable support obligation.

Sixth Circuit case law holds that an award of attorney fees as part of a support obligation satisfies the test set forth in *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 400 (6th Cir.1998). *See also Burnett v. Shain (In re Shain)*, 344 B.R. 821, 824 (6th Cir. 2006). The Court therefore finds that attorney fees owed by Defendant to Plaintiff are part of a nondischargeable support obligation. As with the fees at issue in *Reissig v. Gruber (In re Gruber)*, 436 B.R. 39 (Bankr. N.D. Ohio 2010), "the attorney fees were awarded in a proceeding concerning the health and welfare of the [parties'] children. As such, it is impractical to sever the award of attorney fees from the needs of the children." *Gruber*, 436 B.R. at 43. The court in *Rogers v. Rogers (In re Rogers)*, 2008 WL 1740248 (Bankr. E.D. Tenn) further explained:

> Clearly, the Final Decree does not expressly label the attorneys' fees assessed against the Debtor as 'alimony' or 'support;' however, this type of award is generally intended and treated as a form of support under Tennessee Code Annotated as well as by Tennessee and bankruptcy courts. And, having found the

9

presence of factors to indicate that the court intended to award attorneys' fees in Mrs. Rogers' favor as a method of support, the court determines that Mrs. Rogers' attorneys' fees attributable to the Divorce Action are in the nature of alimony, maintenance, or support, and, as such, are nondischargeable under § 523(a)(5).

*In re Rogers*, 2008 WL 1740248, *9.

Case law outside of the Sixth Circuit also supports the proposition that attorney fees awarded for enforcing or modifying a support obligation are nondischargeable under 11 U.S.C. § 523(a)(5). *See e.g. Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940 (5th Cir. 1993); *Hudson v. Raggio (In re Hudson)*, 107 F.3d 355 (5th Cir. 197); *Holliday v. Kline (In re Kline)*, 65 F.3d 749 (8th Cir. 1995); *Falk & Kiemer, LLP v. Maddigan (In re Maddigan)*, 312 F.3d 589 (2d Cir. 2002); *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444 (11th Cir. 1996). In fact, this Court could not find a single case holding that attorney fees awarded to enforce or modify a judgment of divorce are dischargeable in bankruptcy. Attorney fees are part and parcel of a nondischargeable support obligation under 11 U.S.C. § 523(a)(5).

This Court finds that attorney fees owed by Defendant to Plaintiff are a nondischargeable obligation. However, under the test set forth in *In re Sorah*, once a court finds that a nondischargeable support obligation exists, the Court must determine whether that support obligation is "reasonable". Thus, the only remaining issue in this case is whether the attorney fee portion of the support obligation is excessive and therefore, unreasonable. While it appears that Defendant may still have an argument as to the "reasonableness" of his outstanding support obligation exclusive of the attorney fees, Florida courts have clearly ruled that the attorney fees owed to Plaintiff are reasonable.

10

Defendant's obligation to pay Plaintiff's fees arises from two separate Florida Circuit Court Orders. The first order, entered on February 22, 2010 states:

> The former wife's request for attorney's fees is GRANTED. The Court finds that the hours expended by counsel for the former wife as evidenced by the Attorney's Fee Affidavit submitted to this Court is appropriate and that the records detailing the amount of work performed were reasonable. The Court finds affirmatively that the former wife's attorney has carried his burden of establishing the prevailing market rate and that the rates charged by him is equal to rates charged in this community by lawyers of reasonably comparable skill, experience, and reputation for similar services. Additionally, the number of hours reasonably expended by the former wife's attorney multiplied by his reasonable hourly rate produced the figure determined by this Court as being the objective basis for the award of attorney's fees to the former wife's attorney and has affirmatively found that the number of hours expended by that attorney were reasonable and appropriate. Therefore, the former husband shall pay within thirty (30) days of the date of the entry of this ORDER, the sum of $15,000.00 as his contribution towards the fees and costs incurred for the services of this attorney.

On January 6, 2011, the Florida Circuit Court awarded Plaintiff additional fees in the amount of $15,496.18. In that order, the Circuit Court stated that "Defendant had consistently failed to comply with orders of this Court" and as a result, Dr. Hoff-Sullivan had incurred more than $16,000 of attorney fees "since the last award of attorney's fees which have, likewise, remained unpaid" (Florida Circuit Court Order 1/6/11, ¶F).

This Court finds that the "reasonableness" of the attorney fees owed by Defendant to Plaintiff has already been decided by the Florida state court. In the February 22, 2010 order, the Circuit Court explicitly stated that the fees were reasonable based on the appropriate legal standard. In the January 6, 2011 order, the court acknowledged that Plaintiff had incurred additional fees in attempting to enforce prior court orders. Given that the Florida state court already found that Plaintiff's fees are reasonable, this Court finds no authority to disturb that ruling.

Defendant does not dispute that he has an outstanding support obligation, nor

11

does he directly challenge the reasonableness of Plaintiff's fees. Instead, Defendant argues that under Florida law, a Florida court must consider relative need and the ability to pay in awarding support. *See Coleman v. Blackwell ( In re Blackwell)*, 432 B.R. 856 (Bankr. M.D. Fl. 2010). Defendant contends that the Florida Circuit Court failed to take Defendant's ability to pay into account in entering orders enforcing payment of support, and therefore Plaintiff's fees are dischargeable in bankruptcy. Defendant appears to be confused about the respective role of the state and federal courts in bankruptcy proceedings. Case law makes it clear that the role of the federal bankruptcy court in a divorce proceeding is limited to determining whether an obligation owed by one spouse to another is dischargeable in bankruptcy. The determination of the amount of a support obligation and whether a party has the means to pay that obligation must be determined by the state court.

The relative roles of the state and federal courts in deciding issues related to divorce proceedings was recently discussed in this Circuit. In *Burnett v. Shain ( In re Shain)*, 344 B.R. 821 (W.D. Kentucky, 2006), the debtor argued that the court must independently evaluate the "reasonableness" of a support award. The court stated:

> The Sixth Circuit in *[Fitzgerald v. Fitzgerald (In re] Fitzgerald [*9 F.3d 517 (6th Cir. 1993] specifically admonished courts from considering a debtor's "present needs" when determining if a support obligation should be discharged under § 523(a)(5). [*Fitzgerald*] 9 F.3d 517, 520. If a court did consider a debtor's 'present needs' it 'would result in the discharge of an overwhelmingly high number of support obligations' and the Court did no intend 'to intrude into the states' traditional authority over domestic relations and risk of injustice to the non-debtor spouse or children.' *Id.* at 520-521. This Court is, therefore, bound by the findings of the Family Court which preformed an evaluation of the parties' relative finances and the benefit to the children provided by the litigation at the time it awarded the attorney's fees.

*In re Shain,* 344 B.R. at 825.

Similarly, in an older case from the Eleventh Circuit Court of Appeals, *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444 (11th Cir. 1996), the debtor argued that the bankruptcy court erred when it failed to consider the relative financial situation of the parties in evaluating whether attorney fees were dischargeable in bankruptcy. The Eleventh Circuit Court of Appeals rejected this argument stating:

> [W]e previously have held in this circuit that § 523(a)(5) requires nothing more than 'a simple inquiry as to whether the obligation can legitimately be characterized as support.' *In re Harrell*, 754 F.2d [902] at 906 [11th Cir. 1985)]. Moreover, the '[d]ebtor's attempt to expand the dischargeability issue into an assessment of the ongoing financial circumstances of the parties to a marital dispute would of necessity embroil federal courts in domestic relation matters which should properly be reserved to the state courts.' *Id.* at 907.

*In re Strickland*, 90 F.3d 444, 447.

There is no authority to support Defendant's argument that this Court must evaluate his ability to pay a support obligation before determining whether his obligation to pay attorney fees is a nondischargeable support obligation. Based on the case law and the orders issued by the Florida state courts, Plaintiff's fees in the amount of $30,496.18 are a nondischargeable support obligation pursuant to 11 U.S.C. § 523 (a)(5).

## V. Conclusion

For the reasons stated in this Opinion, Plaintiff's Motion for Summary Judgment is GRANTED. Plaintiff's claim in the amount of $30,496.18 is nondischargeable pursuant to 11 U.S.C. 523(a)(5). Because the Court finds that the attorney fees are nondischargeable under 11 U.S.C. § 523(a)(5), the Court need not address

13

nondischargeability under 11 U.S.C. § 523(a)(15).

Signed on April 19, 2012

                                           /s/ Marci B. McIvor
                                           Marci B. McIvor
                                           United States Bankruptcy Judge

14